*New-Haven,*
July, 1850.

The town of NAUGATUCK *against* The town of MIDDLEBURY.

Naugatuck
*v.*
Middlebury.

In 1807, the town of *M.* was incorporated, including territory taken partly from the town of *W;* and in the act of incorporation, it was provided, that the expense of supporting inhabitants of those towns living without their limits, who should thereafter become chargeable without those limits, should be paid by *W.* and *M.* according to the list of 1806. In 1807, *W.* and *M.* agreed in what manner they would divide the expenses of supporting paupers, who should became chargeable without said limits. In 1844, the town of *N.* was incorporated, comprising territory taken from *W.* *S.,* a pauper, was born, and has ever since had a settlement in that part of the town of *W.,* which thus became a part of *N.* At the time of the incorporation of *M.,* he was living without the limits of *W.* and *M.,* and afterwards became chargeable without those limits; one-fifth part of the expense of his support, which, according to the list of 1806, was *M's* proportion, being paid by *M.* to *W.* until 1844. In 1845, *S.* returned to *N.,* and was supported, as a pauper, by that town. In an action brought by *N.* against *M.,* for its proportion of such support, it was held, 1. that the pauper, by the common law of this state, irrespective of special legislative provisions, was settled in the town of *N.;* 2. that the agreement between *W.* and *M.* in 1807, did not affect the question of settlement; 3. that there was no special provision in the charter of *M,* which subjected that town for the support of *S.,* an inhabitant of, and living in, *N ;* consequently, the plaintiff could not recover. [Two judges dissenting.]

THIS was an action of *assumpsit,* for supplies furnished, by the plaintiffs, to one *Oliver Stephens,* a pauper, from the 1st day of *July* 1844, to the 1st day of *January* 1849.

At the term of the superior court in *New-Haven, January* term, 1850, the following statement of facts was agreed to, by the parties, and was, by the court, found to be true.

1. *Oliver Stephens,* the pauper, was born, and has ever since had a settlement in that part of the old town of *Waterbury,* which is now *Naugatuck.*

2. *Middlebury* was incorporated as a town, by a resolve of the General Assembly, passed in 1807, containing, among others, the following provisions : said town of *Middlebury* shall be liable for the support of their proportion of the poor of said towns, [referring to the towns of *Waterbury, Woodbury* and *Southbury,* from which the territory of *Middlebury* was taken,] and of such as are now chargeable to said towns, according to their list of *August* 1806, and shall assume the maintenance thereof."——" And whereas there are inhabitants, previous to this incorporation, who live without the limits of *Waterbury* and *Middlebury,* and hereafter may become

chargeable without said limits, whenever said charge shall
happen, it shall be paid by said towns of *Waterbury* and *Middlebury,* according to the list of *August,* 1806."

3. At the time of the incorporation of the town of *Middlebury,* the pauper in question was living without the limits of both the towns of *Middlebury* and *Waterbury.*

4. Afterwards, on the 28th day of *December,* 1807, the towns of *Middlebury* and *Waterbury* mutually agreed in writing, regarding the expenses of supporting the poor of said towns, who should become chargeable without said limits, as follows, *viz.,* that the town of *Middlebury* should take, as their proportion of the poor of the town of *Waterbury,* to support thereafter, the widow *Thankful Rowley,* and three others named, not including *Oliver Stevens,* with a special stipulation as to *Obadiah Scott.*

5. The pauper remained absent from both the towns of *Waterbury* and *Middlebury,* from the time of said act of incorporation, for a period of about fifteen years, when he became first chargeable, as a pauper, in the town of *Danbury ;* and soon thereafter was returned, as a charge to the town of *Waterbury,* where he belonged, and where he was afterwards, occasionally, a charge to the town, until 1844 ; when he again left the town of *Waterbury,* and was absent therefrom, and from the town of *Middlebury,* at the time of the incorporation of the town of *Naugatuck,* as hereafter mentioned.

6. The town of *Middlebury* paid to the town of *Waterbury* one-fifth of the expense of supporting said pauper, whenever and wherever incurred, previous to the year 1844 ; that being the proportion of the poor of said towns, according to their list of *August,* 1806.

7. The town of *Naugatuck* was incorporated, by resolve of the General Assembly, in 1844.

8. Afterwards, on the 12th day of *December,* 1844, the towns of *Waterbury* and *Naugatuck,* by the select-men of those towns respectively, duly authorized under the resolution of the General Assembly, incorporating the town of *Naugatuck,* made a written agreement, apportioning and dividing the then present town poor, as follows, *viz.* " They have mutually agreed upon the following list of persons as the present town poor of the town of *Waterbury,* mentioned

in the resolution aforesaid, namely, *Jabez Welton,*" [and twenty-three others, among whom the pauper in question is not named.] " and in pursuance of the resolution of the General Assembly aforesaid, and of the power vested in us thereby, we have apportioned and divided the aforesaid present town poor between the towns of *Naugatuck* and *Waterbury,* as follows, *viz.,* we have apportioned and set to the town of *Naugatuck,* the following persons of the list aforesaid, *viz., Garry Osborn,* [and five others,] and the same shall be settled inhabitants of the town of *Naugatuck,* for all purposes, as specified in the resolution aforesaid ; and the remaining eighteen persons named in the list aforesaid, we have apportioned and set to the town of *Waterbury ;* and the same shall be settled inhabitants of said town of *Waterbury,* for all purposes, as aforesaid."

9. After the incorporation of the new town of *Naugatuck,* the pauper returned to that town, and on the 20th day of *October,* 1845, again became chargeable. And the town of *Naugatuck* has expended the sum of 154 dollars, 97 cents, for the support of said pauper, (in said town,) between the 20th day of *October,* 1845, and the date of this writ ; one-fifth of which they now claim to recover of the town of *Middlebury,* due notice having been given, &c.

Upon these facts, the questions of law arising thereon, were reserved for the advice of this court.

*Buel,* (with whom was *Kellogg,*) for the plaintiffs, contended, 1. That upon the admitted facts, and by the provisions of the resolve of 1807, incorporating the town of *Middlebury,* that town, from the time of the pauper, *Stephens,* first becoming chargeable, was liable for one-fifth part of his support ; that being their proportion under such resolve. In the first place, the pauper living without the limits of the towns of *Middlebury* and *Waterbury,* at the time of the incorporation of the former town, and afterwards, and before returning, becoming first chargeable without the limits of said towns, the liability of *Middlebury* for their proportion of his future support, became *fixed,* as a *permanent liability,* under said resolve. *Priv. Stat.* 1161, 2. Secondly, by the common law of this state alone, in the absence of any different rule prescribed by the legislature, the pauper would have belonged,

wholly to *Waterbury*. *Bethany* v. *Oxford*, 15 *Conn. R.* 550. *Waterbury* v. *Bethany*, 18 *Conn. R.* 424. But, thirdly, the legislature, by the resolve of 1807, have prescribed a different rule from that of the common law, as to two classes of persons: the poor, *then chargeable ;* and those absent, who should afterwards become chargeable *without the limits* of the two towns. To the latter class, the pauper in question belongs. Fourthly, the resolve is to be construed according to the apparent intention of the legislature, to be gathered from the entire language used, in connexion with its subject and purpose ; and a large construction is to be given, when it can be done, without violence to its terms. *Rawson* v. *The State*, 19 *Conn. R.* 292. *Wolcott* v. *Pond*, Id. 597. *Bethany* v. *Oxford*, 15 *Conn. R.* 550. Fifthly, the town of *Middlebury*, for more than twenty years, has given a practical construction to the resolve, by paying their proportion of the pauper's support up to the incorporation of *Naugatuck ;* showing the understanding of the towns of *Middebury* and *Waterbury*, as to the intention of the legislature.

2. That the resolve of 1844, incorporating the town of *Naugatuck*, was not intended to discharge, nor did it expressly or impliedly discharge *Middlebury* from her liability for the support of the pauper *Stephens*, under the resolve of 1807, but only substituted *Naugatuck* as her partner in that liability, in place of *Waterbury*. *Priv. Stat.* p. 86. *sess.* 1844. In the first place, there is nothing in that resolve, that necessarily releases *Middlebury* from her former liability. Secondly, it had no operation, and was not intended to have, except upon the towns of *Waterbury* and *Naugatuck*, they alone being parties to it. Thirdly, it operated as, and was, a transfer or assignment to *Naugatuck*, of all that part of *Waterbury*, and its inhabitants, (including the pauper in question,) who were set off, with all their existing rights, among which was the right to draw from *Middlebury* one-fifth of the support of this pauper. Fourthly, the claim of the plaintiffs, works no injustice to *Middlebury*, and imposes on her no new liabilities. Fifthly, the resolve of 1807, having fixed upon *Middlebury* the liability for one-fifth of the support of this pauper, no subsequent legislative provision whatever, has discharged her from it. Sixthly, the liability of towns for the support of paupers, is a matter of positive law, and cannot be

*New-Haven, July, 1850.*

*Naugatuck v. Middlebury.*

*New-Haven,*
*July, 1850.*

*Naugatuck*
*v.*
*Middlebury.*

taken from one town and imposed upon another, without *express* authority from the legislature.   Such a shifting of liability cannot be effected *by construction.    Simsbury* v. *Hartford,* 14 *Conn. R.* 192.

*Kimberly* and *J. S. Beach,* contra, contended, That *Middlebury,* as a town, is not, and never was, liable for any portion of the expenses incurred *within the limits* of the ancient town of *Waterbury,* for the support of the pauper in question. They supported this position,

1. As between *Waterbury* and *Middlebury.*   In the first place, it is found, that the pauper is now, and ever has been, a settled inhabitant of that part of the ancient town of *Waterbury* now included in the new town of *Naugatuck.*   Secondly, by the common law of this state, the pauper remained chargeable to the town of *Waterbury,* in which he had his legal settlement, at the time of the incorporation of *Middlebury,* unless it is otherwise provided in the act incorporating that town.   *Waterbury* v. *Bethany,* 18 *Conn. R.* 429. and cases there cited.   Thirdly, by the act of 1807, incorporating the town of *Middlebury,* special provision was made for two classes of inhabitants only ; first, those inhabitants then poor and chargeable—that the new town should be liable for the support of its proportion of such persons, according to the list of 1806 ; and secondly, those inhabitants then being out of the limits of both towns, who should thereafter become chargeable without those limits—that such charge should be borne by said towns according to their respective lists of 1806.   Fourthly, all inhabitants of said towns, then residing therein, and not paupers, and all inhabitants then absent therefrom, and who should thereafter return, and become chargeable therein, were left to the operation of the common law.   The pauper in question is within the latter description of persons, and so remained chargeable to *Waterbury* alone.

2. As between *Naugatuck* and *Middlebury.*   First, it is not claimed, that the act of 1844, incorporating the town of *Naugatuck,* imposed any new obligation upon the town of *Middlebury.*   Secondly, if it be admitted, that there was an implied contract, on the part of *Middlebury,* to pay to *Waterbury* a portion of this expense, such a contract was not assignable ;   and no action at law can be sustained by *Nauga-*

*tuck* against *Middlebury.* Thirdly, if *Middlebury* has here-
tofore paid a proportion of such expense, it in no wise affects
the case. The question is, whether the town of *Middlebury*
is *legally liable;* and that question is not affected, by the acts
or declarations of the officers of the town. *Ludlow* v. *Weth-
ersfield*, 18 *Verm. R.* 39. But fourthly, *Middlebury* has
never paid any thing to *Naugatuck.*

ELLSWORTH, J. *Oliver Stephens*, the pauper, was born in
*Naugatuck*, which was, then, a part of *Waterbury*, but is now
a distinct town, by the name aforesaid. By the common law
of this state, a person absent on the division of a town, is
settled in the particular locality where born or settled; and
therefore *Stephens*, unless there be something more, is an
inhabitant of *Naugatuck.*

Had this pauper been supplied by any other town than
*Naugatuck*, it is certain that *Naugatuck* could have been sued
for the support furnished; nor indeed could any other town
have been made liable. He was not born in the limits of the
present town of *Waterbury* or *Middlebury;* and hence they
could not be made liable. *Stephens* cannot be settled in two
towns; and *where is* he settled, if not in *Naugatuck?*

The agreement proved, in this case, between the towns of
*Waterbury* and *Middlebury,* how they will apportion between
themselves the *expenses* incurred for paupers, " who may be-
come chargeable *without said limits*," does not affect the
question of *settlement.*

*Naugatuck* is liable, as if no such agreement had been
made. How then can this town sue for the support of its
own pauper? If it takes the place of *Waterbury*, as being
equitably entitled to the benefit of the provision in the char-
ter, this will not help the matter; for that provision embra-
ces only expenses incurred " *without its limits.*" The latter
words cannot be rejected as unmeaning or inconsistent; nor
is their meaning open to a serious question. The charter of
*Middlebury* seems to have made no provision for *absent* in-
habitants, who should return to their respective towns, and
become poor. Perhaps the legislature expected the usual
law to apply, as the chance would be equal in the two towns,
in proportion to the extent of territory.

*New-Haven,*
*July, 1850.*

Naugatuck
*v.*
Middlebury.

We advise that judgment be rendered for the defendants.

In this opinion, CHURCH, Ch. J. and STORRS, J. concurred.

WAITE and HINMAN, Js. thought, that, by the last clause in the act incorporating the town of *Middlebury*, the inhabitants of *Waterbury* and *Middlebury*, then residing without the limits of those towns, who afterwards became chargeable without said limits, were thereafter to be supported at the joint expense of such towns; and that the application of said clause was not restricted to the expense of supporting said paupers, while residing out of said limits; and, as the pauper in question was one of the persons to whom the clause properly applied, it was the duty of *Middlebury* to pay its proportion of the expense of supporting him.

They also thought, that the incorporation of *Naugatuck* had not varied the liability of *Middlebury*, in any respect: that its only effect was, to exonerate *Waterbury* from its liability, and cast it upon *Naugatuck*; and consequently, under the facts agreed to, in this case, the plaintiffs were entitled to recover the amount claimed by them.

Judgment for defendants.